**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CURTIS STABILE,<br><br>     *Plaintiff*,<br><br>v.<br><br>MACY'S, INC., FELICIA GREEN-HALL, individually, and JOHN DOES I-X (being a number yet undetermined and being persons or corporations whose identities are unknown),<br><br>     *Defendants*. | Civil Action No. 22-06776<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

      This action alleges that the Plaintiff's employer unlawfully discriminated against him both in his compensation and by firing him. Plaintiff Curtis Stabile sues his former employer, Macy's, Inc. ("Macy's") and his former immediate superior, Felicia Green-Hall,[1] alleging violations of the New Jersey Law Against Discrimination and Equal Pay Act. Currently pending before the Court is Defendants' "motion to compel arbitration and dismiss the complaint or alternatively stay this action in favor of arbitration." D.E. 7. The Court reviewed the parties' submissions[2] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the

---

[1] Defendants note that the correct spelling is Felecia Green-Hall.

[2] The submissions consist of Defendants' motion, D.E. 7, and accompanying brief, D.E. 7-1 ("Br."); Plaintiff's opposition, D.E. 10 ("Opp."); and Defendants' reply, D.E. 11 ("Reply").

following reasons, Defendants' motion is **DENIED without prejudice** to permit limited discovery.

## I. FACTUAL BACKGROUND[3]

Plaintiff alleges that he became an employee of Macy's on or about July 27, 2001. Compl. ¶ 10. Plaintiff served as the "Senior Director, Store Manager" and as the "Northeast Region's Diversity, Inclusion, and Equity Manager in Charge," and was most recently employed at the Newport Centre Macy's Store in Jersey City, New Jersey. *Id.* ¶¶ 3-4. Defendant Green-Hall was "Macy's Division Vice-President of the New Jersey Central District, and Plaintiff's immediate superior." *Id.* ¶ 5.

Plaintiff is "white and has a gay sexual orientation." *Id.* ¶ 2. Plaintiff alleges that throughout his employment, "Macy's has maintained a corporate culture that is hostile to employees with [*sic*] due to their race, sexual orientation or perceived sexual orientation." *Id.* ¶ 11. Plaintiff alleges that he objected to hiring decisions made by Defendant Green-Hall, which he felt were "unlawful" or "solely based on [the candidate's] racial status." *Id.* ¶¶ 22-23. Plaintiff also alleges that he "complained to Ms. Hall that his compensation was not commensurate with others not in his protected status." *Id.* ¶ 25. After making these complaints, Plaintiff claims that his "work relationship with Ms. Green-Hall changed." *Id.* ¶ 32. Plaintiff "felt that his relationship by early May 2021 with Ms. Green-Hall had gone from positive to negative because of the issues that he raised with her." *Id.* ¶ 36.

Plaintiff alleges that on May 10, 2021, "there was an incident with a suspected shoplifter in the Jersey City Store" and that "Macy's claimed that Mr. Stabile tried to apprehend the

---

[3] The facts are taken from Plaintiff's Complaint, D.E. 1 at 10-21 ("Compl."), and the Certifications and Declarations submitted by the parties in connection with the motion, D.E. 7-2, D.E. 7-3, D.E. 10-1, D.E. 11-1.

shoplifter." *Id.* ¶¶ 37-38.  Plaintiff "denies trying to apprehend the shoplifter" and claims that there is a video recording "showing that Plaintiff and Mr. Guzman," a Hispanic male employee, "attempted to deter the shoplifter by approaching him and asking if they could be of assistance." *Id.* ¶¶ 39-40.  Plaintiff claims that his "actions were consistent with his understanding of Macy's policy.  However, Macy's first suspended and then fired Mr. Stabile." *Id.* ¶ 41.  Plaintiff adds that "[u]pon information and belief, Mr. Guzman was not disciplined." *Id.* ¶ 42.  Plaintiff also alleges that "there exists a video of a person of color apprehending a shoplifter by dragging her on the floor of Jersey City store during November of 2020" and that "[t]his employee was not disciplined." *Id.* ¶¶ 43-44.

Plaintiff asserts claims under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.*, for discrimination on the basis of actual or perceived sexual orientation and/or gender expression (Count One), and discrimination on the basis of race (Count Two).  Plaintiff also asserts a violation of the Equal Pay Act, N.J.S.A. § 10:5-12 (Count Three).  Plaintiff initially filed his Complaint in Superior Court of New Jersey.  D.E. 1 ¶ 2.  Defendants removed the matter to this Court on November 28, 2022.  D.E. 1.  The present motion followed.  D.E. 7.

The Complaint does not reference, rely upon, or attach any employment agreement or arbitration agreement.  In support of their motion, however, Defendants submitted additional materials.  *See* D.E. 7-2; D.E. 7-3.  First, Defendants submitted the Declaration of Owen Lewis who is the "Manager, Media Services, for Macy's Credit and Customer Services, Inc." D.E. 7-2 at ¶ 2.  Lewis explains the processes Macy's uses to facilitate mass mailings, and claims that such processes were used for mailings that were purportedly sent to Plaintiff regarding his agreement to arbitrate employment disputes.  D.E. 7-2.

Defendants also submit the Declaration of Cynthia Ripak, the "Senior Manager of the Office of Solutions InSTORE for Macy's, Inc." D.E. 7-3 at ¶ 3. Ripak states that Macy's created a "Solutions InSTORE Early Dispute Resolution Program" (the "SIS Program"). *Id.* ¶¶ 4-5. The SIS Program "contains four separate steps for resolution of work-related complaints. The final step is binding arbitration unless the employee opts out of the arbitration portion of the [SIS] Program." *Id.* ¶ 8. Ripak explains that

> Step 4 involves binding arbitration administered by the American Arbitration Association ("AAA"). Arbitration under the Solutions InSTORE Program is a voluntary term and condition of employment in that all employees are given at least one opportunity to opt out of Step 4-Arbitration by completing an Election Form and mailing it to the Office of Solutions InSTORE at a designated address in Mason, Ohio. Curtis Stabile and other Macy's employees who were employed at the time of the initial Solutions InSTORE Program rollout received two separate opportunities to opt out of Step 4-Arbitration. If an employee does not submit the Election Form within the prescribed time period, that employee agrees to arbitration.

*Id.* ¶ 9. If the employee does not opt out of the agreement to arbitrate, then the agreement applies mutually to both Macy's and the employee. *Id.* ¶ 13. The "Plan Document," D.E. 7-3 at 29-50, also purportedly applies to claims "against any employee, officer, director or alleged agent of" Macy's. D.E. 7-3 at 36. The Plan Document indicates that the agreement to arbitrate applies to "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment" and that such claims "shall be settled exclusively by final and binding arbitration" administered by the AAA. *Id.* at 35. The Plan Document also states as follows:

> By agreeing to arbitration, the Associate and the Company agree to resolve through arbitration all claims described in [the Plan Document]. This means that neither the Associate nor the Company can file a civil lawsuit in court against the other party relating to such claims. If a party files a lawsuit in court to resolve claims

4

>subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program.

*Id.* at 37. Ripak further claims that the SIS Program applied to all non-unionized Macy's employees, including Plaintiff. D.E. 7-3 ¶ 15. At the time the SIS Program became effective, January 1, 2004, Plaintiff worked at Macy's Horton Plaza in San Diego, California. *Id.*

Ripak further explains the rollout for the SIS Program. She claims that her office first "directed each Macy's division to hold information meetings in the stores." *Id.* ¶ 16. Employees were required to attend one of the meetings. *Id.* ¶ 17. Macy's then sent the "Plan Document" and an "Early Dispute Resolution Program Election Form." *Id.* ¶ 25; *see also id.* at 82. Employees were given the chance to opt out of Step 4 – Arbitration by returning the Election Form by specified dates. *Id.* ¶ 25. According to Ripak, "[a]pproximately ten percent of all eligible employees used the opt-out procedure . . . and opted out of arbitration." *Id.* ¶ 29. Ripak states that Plaintiff did not return an Election Form in the Fall of 2003, and thus did not opt out of arbitration. *Id.* ¶¶ 31-32. Employees were also given another opportunity to opt out of Step 4 – Arbitration in October 2004. *Id.* ¶¶ 37-38. An additional mailing was purportedly sent to Plaintiff about this second opportunity to opt-out, but Macy's again did not receive an Election Form from Plaintiff. *Id.* ¶ 44.

## II.   LAW AND ANALYSIS

The Federal Arbitration Act ("FAA") "makes agreements to arbitrate enforceable to the same extent as other contracts." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999) (citation omitted). As a result, "federal law presumptively favors the enforcement of arbitration agreements." *Id.* (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 231 (3d Cir. 1998)). Unless otherwise agreed, the arbitrability of a dispute is generally a question for judicial determination. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "When

deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id.* On a motion to compel arbitration, the Court must consider two threshold questions: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998) (citation omitted); *see also CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014).

In *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013), the Third Circuit explained the proper standard to apply to a motion to compel arbitration. The Circuit explained that "[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)," the FAA favors resolving a motion to compel arbitration under a motion to dismiss standard. *Id.* at 773-74 (internal quotation marks and citations omitted). The Circuit continued that the motion to dismiss standard will only be replaced by the motion for summary judgment standard if (1) the complaint—and documents relied on in the complaint—are unclear regarding whether the parties agreed to arbitrate; or (2) the non-moving party "has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Id.* at 774-76. In either scenario, the Circuit noted that

> a "restricted inquiry into factual issues" will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, [*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)], and the non-movant "must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity" of the arbitration agreement, *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494 511 (7th Cir. 2003).

*Id.* at 774.  The Circuit concluded that "[a]fter limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.* at 776.

Under Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).  To withstand a properly supported motion for summary judgment, the non-moving party must identify

specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

The parties do not discuss the appropriate standard of review. Defendants' motion relies on a purported agreement to arbitrate made up of the Plan Document, D.E. 7-3 at 29-50; opt-out forms, D.E. 7-3 at 82, 113; and other materials. *See* Reply at 8 n.1 (urging that "all of the materials are important and are used to educate employees on their rights and options with respect to arbitration" and that the opt out forms were "not given to employees in a vacuum but were given to the employees along with other materials related to arbitration"). These documents are not integral to, referenced in, or attached to the Complaint, making a Rule 12(b)(6) standard inappropriate. *See Guidotti*, 716 F.3d at 774 (noting that where arbitrability is not "apparent on the face of the complaint . . . the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard").

The Third Circuit has indicated that where, as here, the agreement to arbitrate is not "apparent on the face of the complaint, the motion to compel arbitration *must be denied* pending further development of the factual record." *Id*. (emphasis added); *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 407 (3d Cir. 2020) (upholding the district court's conclusion that "'[w]hen the issue of arbitrability is not apparent on the face of the complaint,' a

court may authorize discovery"); *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018) (denying a motion to compel arbitration without prejudice and ordering limited discovery on the issue of arbitrability where the motion relied on an agreement "not referenced in the Complaint but . . . raised for the first time in Defendant's motion"); *Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-0756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) ("Because an agreement to arbitrate cannot be gathered from the face of the Complaint, the Court will deny the motion without prejudice, order limited discovery on whether an agreement to arbitrate exists with respect to this rental, and if necessary, entertain a future motion to compel arbitration under a summary judgment standard."); *Ross v. CACH, LLC*, No. 14-6321, 2015 WL 1499282, at *2 (D.N.J. Apr. 1, 2015) ("Under *Guidotti*, the Court cannot decide the motion without first ordering discovery because the Complaint does not have the requisite clarity to establish on its face that the parties agreed to arbitrate. . . . . [The complaint] make no reference to [the agreement]; it does not attach [the agreement] as an exhibit; and it does not base its FDCPA claim on the existence of [the agreement]."). The documents making up the purported agreement are provided and raised for the first time in Defendants' motion. Plaintiff responds, in part, with a factual contention that he does not recall receiving the documents and thus argues that no agreement was reached. D.E. 10-1 ¶¶ 4-5. Plaintiff further claims that "[i]t is [his] custom and practice to retain all correspondence and agreements with [his] employer in a designated folder" and that he "thoroughly searched this folder" but "no arbitration related documents from Macy's are in there." *Id.* ¶ 7. Because the purported arbitration agreement is not apparent on the face of the Complaint and Plaintiff has raised a factual issue as to its validity, the Court will deny the present motion without prejudice, order limited discovery on whether a valid

9

and enforceable agreement to arbitrate exists, and if necessary, entertain a future motion to compel arbitration under a summary judgment standard.

Defendants argue that Plaintiff's contention that he does not recall receiving the documents fails as a matter of law because they are entitled to a presumption of receipt under the mailbox rule. Reply at 3-5. However, this legal conclusion is based on a contested factual issue, thereby reinforcing the need for limited discovery in this matter.[4] Similarly, because the legal arguments regarding the validity of the purported arbitration agreement are secondary to the factual dispute as to receipt and formation, the Court will not address them at this time.

---

[4] Under the mailbox rule, "'if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed . . . that it reached its destination . . . and was received by the person to whom it was addressed.'" *Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 136 (3d Cir. 2019) (quoting *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 319 (3d Cir. 2014)). The mailbox rule creates a rebuttable inference of delivery if the party establishes that the item was mailed. *Lupyan*, 761 F.3d at 319-20. There is a "strong presumption" of receipt if the mailing was sent via certified mail "because it creates actual evidence of delivery in the form of a receipt." *Id.* at 319 (citation omitted). But where mail is "sent via regular mail, for which no receipt, or other proof of delivery, is generated[,]" there is a "weaker presumption" of receipt. *Id.* Receipt, however, "can be proven circumstantially by introducing evidence of business practices or office customs pertaining to mail." *Id.* (citation omitted). Once the presumption of receipt is established, the party arguing that he never received the mailing has the burden to produce evidence that rebuts the presumption. *Id.* at 320-21. "[A] single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue is sufficient to defeat summary judgment," even if the affidavit is "self-serving." *Id.*

The Ripak Certification and Lewis Certification set forth the business practices Macy's followed in facilitating these mailings. *See generally* D.E. 7-2; D.E. 7-3. But Macy's did not use certified mail and has not indicated that it received any receipt or indication of delivery, making the presumption of receipt "at most . . . 'very weak.'" *Guerra*, 936 F.3d at 137 n.7; *Lupyan*, 761 F.3d at 319-20 (noting that a weak presumption of receipt "arises where delivery is sent via regular mail, for which no receipt, or other proof of delivery, is generated").

10

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration, D.E. 7, is **DENIED without prejudice**.  The parties shall conduct limited discovery as to whether a valid and enforceable arbitration agreement exists, and Defendants may thereafter renew their motion to compel arbitration, if appropriate.  An appropriate Order accompanies this Opinion.

Dated: July 13, 2023

                                                                                     _____
                                                                                     John Michael Vazquez, U.S.D.J.