**BARTON GILMAN LLP**
165 Passaic Avenue, Suite 107
Fairfield, NJ 07004
Tel: (973) 256-9000
*Attorneys for Defendants,*
*Macy's, Inc. and Felecia Green-Hall*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CURTIS STABILE,<br><br>                              *Plaintiff,*<br><br>  v.<br><br>MACY'S, INC., FELICIA GREEN-HALL, Individually, and JOHN DOES I-X (being a number yet undetermined and being persons or corporations, whose identities are unknown),<br><br>                              *Defendants.* | Case No. 2:22-cv-06776-MEF-ESK<br><br>**DECLARATION OF STEVEN GERBER, ESQ. IN SUPPORT OF DEFENDANTS'F RENEWED MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT OR ALTERNATIVELY STAY THIS ACTION IN FAVOR OF ARBITRATION** |

I, STEVEN GERBER, hereby declare as follows:

1.      I am a partner of Barton Gilman LLP and am counsel of record in this civil action for Defendants Macy's, Inc. and Felicia Green-Hall (collectively, "Defendants").   I am an attorney admitted to practice before this United States District Court, in the State of New Jersey, New York and Massachusetts, and in other U.S. District Courts and U.S. Courts of Appeals.  I have personal knowledge of the facts set forth in this Declaration.

2.      Attached to this Declaration as Ex. A is a true copy of the Declaration of Curtis Stabile ("Stabile Decl."), ECF Doc. 10-1, filed with this Court as part of Plaintiff's opposition to Defendants' original motion to compel arbitration.

3.      I represented Defendants at the October 27, 2023 deposition of Plaintiff and took Plaintiff's deposition.

4.      Attached to this Declaration as Ex. B are excerpts from Plaintiff's deposition identified in Defendants' accompanying Statement of Undisputed Material Facts and in Defendants' accompanying moving Memorandum of Law.

5.      Attached to this Declaration as Ex. C are two photographs produced by Plaintiff in discovery about which he was questioned at his deposition.  The photographs were collectively marked as Ex. 2 at Plaintiff's deposition.

6.      Attached to this Declaration as Ex. D is a true copy of Plaintiff's Responses to Defendants' Document Demands, which was marked as Ex. 11 at Plaintiff's deposition.

7.      Attached to this Declaration as Ex. E is a true copy of a letter to Plaintiff dated May 3, 2004, which was marked as Ex. 9 at Plaintiff's deposition.  Other than the deposition court reporter's yellow "Ex. 9" sticker on Ex. E to this Declaration, Ex. E is identical to Ex. B in the accompanying Declaration of Eric Welch.

8.      Attached to this Declaration as Ex. F is a true copy of a letter to Plaintiff dated June 9, 2004, which was marked as Ex. 10 at Plaintiff's deposition.  Other than

the deposition court reporter's yellow "Ex. 10" sticker on Ex. F to this Declaration,

Ex. F is identical to Ex. B in the accompanying Declaration of Steve Hathaway.

I declare under the penalties of perjury under the laws of the United States of

America that the foregoing is true and correct.

_____

Steven Gerber

Dated: January 12, 2024

Exhibit "A"

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**Leslie A. Farber, Esq.**
Attorney ID: 019041991
**LESLIE A. FARBER, LLC**
105 Grove Street, Suite 1
Montclair, New Jersey 07042
Ph. (973) 746-6655
Email: LFarber@LFarberLaw.com
Attorneys for Plaintiff

**FRED SHAHROOZ SCAMPATO, ESQ.**
Attorney ID: 020811991
**Law Offices of Shahrooz Scampato, P.C.**
445 East Broad Street
Westfield, New Jersey 07090
Ph. (908) 301-9095

| | |
|---|---|
| **CURTIS STABILE,** | Civil Case No. 2:22-cv-06776 |
| *Plaintiff,* | CIVIL ACTION |
| v. | **DECLARATION OF CURTIS STABILE** |
| **MACY'S INC., FELICIA GREEN-HALL, et al,** | |
| *Defendants.* | |

1.    I, Curtis Stabile, am the Plaintiff in the above captioned case, and have personal knowledge of the facts stated herein.

2.    I make this Declaration in support of Plaintiff's opposition to Defendants' Motion to Dismiss Plaintiff's Complaint and/or to compel arbitration of all claims.

3.    At time that Macy's alleges it sent one or more arbitration notices to me in September 2003, I resided at 9929 Erma Road, #204, San Diego, CA 92131.

4.    Regardless of Macy's attestations that it mailed said notices to me, I do not recall ever receiving one.

1

5.      I also do not recall ever receiving or submitting an "Arbitration Election Form" referred to in Defendants' Exhibit A attached to their Motion.

6.      I moved from California to New Jersey in August 2017 and worked for Macy's in California before that move and worked for Macy's in New Jersey after I moved to New Jersey. I never submitted an Arbitration Election Form since I worked for Macy's in New Jersey.

7.      It is my custom and practice to retain all correspondence and agreements with my employer in a designated folder. I thoroughly searched this folder and state that no arbitration related documents from Macy's are in there.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 23, 2023

Curtis Stabile

Exhibit "B"

Page 1

1              UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF NEW JERSEY

3    _____

4    CURTIS STABILE,

5              Plaintiff,

6       v.                          Case No.

7    MACY'S INC., FELICIA GREEN-HALL,    2:22-cv-06776-

8    et al.,                            MEF-ESK

9              Defendants.

10   _____

11              VIDEOCONFERENCE DEPOSITION OF

12                   CURTIS STABILE

13   DATE:          Friday, October 27, 2023

14   TIME:          10:33 a.m.

15   LOCATION:      Remote Proceeding

16                  West Milford, NJ 07480

17   REPORTED BY:   Mario Melara

18   JOB NO.:       6153754

19

20

21

22

23

24

25

Page 10

1    A   Not that I can recall.
2    Q   Okay.  All right.  During the deposition, a
3    couple of other ground rules.  If I do pose a
4    question, you'll be required to answer the question.
5    I don't think we're going to be that long today but we
6    may take a break.
7        If you do feel like you need a break, you
8    can feel free to ask for one but ask for one as you
9    complete an answer to a question as opposed to waiting
10   for a question; okay, Mr. Stabile?
11   A   Yes.
12   Q   Okay.  By brief background, you began
13   working for Macy's in 2003; correct, sir?
14   A   Yes.
15   Q   Okay.  And in 2003 and 2004 --
16   A   Oh.  I'm sorry.  Could you repeat that
17   question?
18   Q   You began working for Macy's when?
19   A   2001.
20   Q   Okay.  And you were working for Macy's in
21   2003; correct?
22   A   Correct.
23   Q   And in 2003 you were working for a Macy's
24   store located in the San Diego, California area;
25   correct?

Page 11

1    A   That's correct.
2    Q   I understand there came a time when you
3    moved to New Jersey?
4    A   Correct.
5    Q   Okay.  And that was in 2017; correct?
6    A   Yes, I believe it was.
7    Q   Okay.  From 2001 until 2017, did you work
8    for Macy's at a store or stores in Southern
9    California?
10   A   I'm sorry.  Could you repeat the last --
11   Q   Sure.  From the time you started working for
12   Macy's, until you moved to New Jersey in I believe you
13   said 2017; correct, sir?
14   A   Correct.
15   Q   You worked for Macy's in Southern
16   California; correct?
17   A   That is correct.
18   Q   Okay.  And in 2003, did you work at a Macy's
19   store in the San Diego area, referred to as the
20   "Horton Plaza" store?
21   A   Correct.
22   Q   Okay.  And approximately how long did you
23   work for Macy's at the Horton Plaza store until?
24   A   I believe it was five years at least, about
25   five years.

Page 12

1    Q   Okay.  So is it fair to say that according
2    to your recollection you were working at the Horton
3    Plaza store in 2003 and in 2004?
4    A   Yes.
5    Q   Okay.  And was thereafter a different store
6    that you began working for Macy's at in Southern
7    California?
8    A   Yes.
9    Q   And was that called the "Imperial" store?
10   A   No.
11   Q   Okay.  What store after Horton Plaza did you
12   work for while you were employed by Macy's sometime
13   after, I gather, 2005?
14   A   Yes.  I don't remember the exact date but --
15   that -- that I left that location but I was -- it was
16   Macy's University Town Center.
17   Q   Okay.  And was that in the San Diego area as
18   well?
19   A   Yes.
20   Q   Okay.  And did you continue to work at that
21   store until the time that you moved to New Jersey?
22   A   No.
23   Q   Okay.  Did you work at another store in the
24   southern California area after the Universal [sic]
25   location?

Page 13

1    A   Yes.
2    Q   Okay.  At the time you were working first
3    for Macy's at Horton Plaza through 2005 or '06, did
4    you receive from Macy's documents to enable you to
5    file federal and state and local income tax returns?
6    A   I don't recall those specifics ones for that
7    via mail.
8    Q   I'm not asking you to recall specific ones.
9    In connection with filing income tax returns, when you
10   were employed by Macy's, for example in 2003 through
11   2005, did you need to have a W2 form for Macy's to be
12   submitted with your income tax returns?
13   A   Yes.
14   Q   Okay.  And you received those W2 forms from
15   Macy's via mail in 2003, 2004, and 2005; correct?
16   A   I don't recall if it was via mail.
17   Q   Okay.  When you say you don't recall, just
18   making sure that we understand each other, I
19   understand, I think, what you mean.
20   A   Yeah.
21   Q   "I don't recall" as you're using it in your
22   testimony and in this case, means you have no specific
23   recollection of whether it happened that way or it did
24   not happen that way; is that correct?
25   A   I do not have a specific recollection that

4 (Pages 10 - 13)

1    it happened that way.
2       Q   Nor do you have a specific recollection that
3    it did not happen that way; correct?
4       A   Correct.
5       Q   So "I don't recall" means "I don't recall
6    one way or the other;" is that fair?
7       A   Correct.
8       Q   Okay.
9           MR. GERBER:  Can you mark as an exhibit
10   and put in front of the witness, Mr. Melara, Exhibit 1
11   for this deposition?
12          (Exhibit 1 was marked for
13          identification.)
14          THE REPORTER:  Yes.  Exhibit 1.  Okay.
15   One second please.
16          MR. GERBER:  Okay.  You can switch to
17   gallery view.
18          MS. FARBER:  And even though I have
19   these documents, the ones you show so far, I assume
20   you're going to send me copies afterwards of
21   everything?
22          MR. GERBER:  Well, what we're going to
23   do -- off the record.  What we're going to do Ms.
24   Farber is we're going to have Veritext endorse them
25   with the exhibit stamp and attach them to the

1    deposition transcript electronically.
2           MS. FARBER:  All right.
3           MR. GERBER:  When we go back on the
4    record later you can indicate.  I assume you are going
5    to order a copy?
6           MS. FARBER:  Yes.
7           MR. GERBER:  All right.  Let me just
8    see if I can change my view so I can --
9    BY MR. GERBER:
10      Q   Okay.  Mr. Stabile, can you see the
11   beginning of this document that we've marked as
12   Exhibit 1?
13      A   I can.
14          MR. GERBER:  Okay.
15          Can you scroll down, please, Mr.
16   Melara, so that he can see the text on the bottom of
17   page 1 of the document?  Thank you.
18   BY MR. GERBER:
19      Q   Do you recognize this document?
20      A   I do.
21          MR. GERBER:  Okay.
22          Can you scroll down onto page 2 of the
23   document so Mr. Stabile can see the remainder of it,
24   please, Mr. Melara?  Okay.  That's fine.
25   //

1    BY MR. GERBER:
2       Q   Now in front of you is page 2 of this
3    document.  Do you recognize it, Mr. Stabile?
4       A   I do.
5       Q   Do you recognize your signature on page 2?
6       A   I do.
7       Q   And you understood when you signed this
8    document that it was under penalty of perjury as true
9    and correct; correct?
10      A   Yes.
11          MR. GERBER:  Okay.  All right.
12          In paragraph 4, if you go back, briefly
13   currently, Mr. Melara?  Paragraph number 4 on the
14   prior page.
15   BY MR. GERBER:
16      Q   You swore that, "regardless of Macy's
17   attestations that it mailed said notices," referring
18   to the arbitration notices, "to me, I do not recall
19   ever receiving one."  Do you see that, sir?
20      A   I do.
21      Q   Okay.  And your declaration was truthful in
22   that regard; right?
23      A   Yes.
24      Q   Okay.  So in other words, referring to the
25   arbitration notices that were at issue that you refer

1    to in paragraph 3, you do not recall whether or not
2    you ever received one of those arbitration notices;
3    correct?
4       A   That is correct.
5       Q   Turn to the following page, please,
6    paragraph 5.  Similarly, you swore under oath in the
7    submission to the court that you did not receive an
8    arbitration election form; correct?
9       A   Correct.
10      Q   Okay.  And so it's clear what you meant by
11   paragraph 5, you do not recall whether you received or
12   whether you did not receive an arbitration election
13   form; correct?
14      A   Correct.
15      Q   Okay.  In paragraph 6, you refer to moving
16   to New Jersey in August 2017; correct?
17      A   Correct.
18      Q   Okay.  Approximately how many locations --
19   well, let me go back for a second.
20          MR. GERBER:  Go back to page 1, please,
21   of Exhibit 1, Mr. Melara, for a second.
22   BY MR. GERBER:
23      Q   Do you see paragraph 3 of your declaration,
24   Exhibit 1, before you, Mr. Stabile?
25      A   I do.

5 (Pages 14 - 17)

1    Q   Okay.  And in this declaration, you swore
2  that in September 2003, that you resided at 9929 Erma,
3  E-R-M-A, Road, number 204, San Diego, California with
4  the zip code; correct?
5    A   Correct.
6    Q   And that statement was accurate; correct?
7    A   Yes, I believe it was.
8    Q   Okay.  In your declaration --
9        MR. GERBER:  Page 2 of it, kindly, Mr.
10  Melara.
11  BY MR. GERBER:
12    Q   You write, paragraph 7, "It was my custom
13  and practice to retain all correspondence and
14  agreements with my employer in a designated envelope."
15  Is that statement accurate, sir?  That's designated
16  folder, excuse me.
17    A   Correct.
18    Q   Okay.  And in this case in discovery at the
19  direction of your counsel, you produced a number of
20  folders and documents; correct?
21    A   Correct.
22    Q   And those folders and documents, or the
23  documents and folders that you had that in any way
24  related to your employment at Macy's; correct?  That
25  you had when you were asked for the documents;

1  correct?
2    A   Correct.
3    Q   Okay.  And you went through each of those
4  documents that were later produced by your counsel in
5  those folders; correct?
6    A   Yes.
7    Q   Okay.  What was the designated folder
8  labeled in those documents, Mr. Stable?
9    A   I'm sorry.  Can you ask that again?
10    Q   What was the designated folder that you
11  referred to in paragraph 7 labeled in the series of
12  folders that you produced pictures of?
13    A   I don't recall what the label was on the
14  outside.
15    Q   Okay.  So you searched through all the
16  documents that you produced and all the folders prior
17  to signing this declaration; correct?
18    A   Correct.
19    Q   In none of those folders did you find any W2
20  forms from Macy's did you?
21    A   No.
22    Q   During the period of time that you were
23  employed by Macy's in New Jersey from 2017 until your
24  employment ended, did you file federal income taxes
25  reflecting your income from Macy's?

1    A   Yes.
2    Q   Did you receive W2 forms from Macy's that
3  you had to attach electronically or otherwise to your
4  tax returns?
5    A   Yes.
6    Q   And you don't have those documents in these
7  folders that you produced; correct, sir?
8    A   Correct.
9    Q   And you don't have those documents either;
10  correct?
11    A   Not a physical form.
12        MR. GERBER:  Can you kindly put up in
13  front of the screen so the witness and Counsel can see
14  it, what we mark as Exhibit 2.
15        (Exhibit 2 was marked for
16          identification.)
17  BY MR. GERBER:
18    Q   Okay.  Can you -- I'm going to direct your
19  attention --
20        MR. GERBER:  Can you scroll down
21  slightly, Mr. Melara, so -- I'm not sure.
22        Mr. Stabile, can you see the entirety
23  of that page?
24        THE WITNESS:  No.
25        MR. GERBER:  Okay.

1        Can you zoom down a little bit, Mr.
2  Melara, so that we can also see the bottom right
3  corner of the page for a moment?
4        Okay.  And now zoom in so that Mr.
5  Stabile can confirm on the record the numbering of
6  that page.  Thank you.
7  BY MR. GERBER:
8    Q   Mr. Stabile, in front of you is a copy of a
9  document.  It's a copy of a photograph in color.  As
10  with your other document production, your counsel
11  numbered the documents that you produced for the
12  limited discovery about the arbitration agreement with
13  numbers in the lower right or left corner.  Do you see
14  the number CS182?
15    A   I see CS0182.
16    Q   Okay.  182?
17    A   Yes.
18        MR. GERBER:  Okay.
19        And Mr. Melara, can you go next to the
20  second page of the document so that Mr. Stabile can
21  see the page number on that?
22  BY MR. GERBER:
23    Q   And on the second page of Exhibit 2 produced
24  by your counsel, do you see the Bates Number CS0183?
25    A   Yes.

Page 22

1      MR. GERBER:  Okay.
2          Go back, please kindly, Mr. Melara, to
3  page 1.
4  BY MR. GERBER:
5      Q   Mr. Stabile, there are some Post-it notes on
6  these folders; correct?
7      A   Yes.
8      Q   Okay.  Are any of these folders the
9  "designated folder" that you referred to in your
10  declaration, Exhibit 1?
11      A   No.
12      Q   Okay.
13      A   No.
14      Q   I heard your answer.  The picture on the
15  second page are the same exact folders but turned in
16  the opposite direction; correct, Mr. Stabile?
17      A   I believe so.
18      Q   Okay.  And none of the folders in Exhibit 2
19  are "the designated folder?"  Is that your testimony?
20      A   I'm sorry.  My computer just did something.
21  One moment.
22      Q   Sure.
23      A   I'm sorry about that.  My apologies.  Could
24  you repeat the question?
25      Q   Sure.  I asked you a minute ago just to

Page 23

1  confirm whether any of the folders that are shown
2  here, which contain your document production, are the
3  designated folder that you referred to in your
4  declaration, Exhibit 1?
5      A   Yes.  All the folder.  All of it is
6  pertinent material.
7      Q   Okay.  So in your declaration, you said that
8  you "kept all correspondence and agreements with my
9  employer in a designated folder."
10          Actually, is it your testimony now that in
11  one of these folders you kept all your agreements and
12  correspondence?  Or collectively these documents are
13  all the agreements and correspondence that you had at
14  the time you produced the documents?
15      A   At the time that I produced the documents,
16  these are all of the folders.  "Folder" meaning they
17  were in a Pendaflex file.  These are spread out seeing
18  if you were to look at it, it's folders.
19      Q   Okay.
20      A   In a designated folder or file.
21      MR. GERBER:  All right.
22          Can you go back to page 1 of Exhibit 2,
23  please, Mr. Melara?
24  BY MR. GERBER:
25      Q   To make sure that I understand.  I'm not

Page 24

1  trying to confuse you, Mr. Stabile.
2      A   Okay.
3      Q   There is no specific Pendaflex folder
4  amongst all your documents that you've produced
5  regarding Macy's that is labeled something like
6  "agreements and correspondence" regarding employment.
7  Whatever they are, we are looking at them; correct?
8      A   That is correct.  There is no folder --
9  there is no Pendaflex file in this picture.
10      Q   Okay.  So is it your testimony, sir, that
11  you kept all correspondence you had with Macy's from
12  2003 through the end of your employment in this group
13  of folders?
14      A   That is what -- what you see in the photo is
15  what I had.
16      Q   Okay.  It appears to me from the first page
17  on this that there is material that says "2016;"
18  correct?  Do you see that?
19      A   Yes.
20      Q   There is material that says "2019JC."  I
21  assume that means Jersey City; correct?
22      A   Yes.
23      Q   There's a folder next to engagement survey
24  that refers to spring 2018; correct?
25      A   Correct.

Page 25

1      Q   There's something called "Old Round Room"
2  and that's also for that period of sometime after you
3  came to New Jersey; correct?
4      A   No.
5      Q   When is that?  What year is that?
6      A   It says "Old Round Robin."  And there are
7  multiple years in there.
8      Q   Okay.  That's a round robin part of the --
9  we'll look at those documents if we need to but those
10  documents don't predate 2010; correct?
11      A   I'm not sure.
12      Q   Okay.  And then there are some documents in
13  the back; right?
14      A   Yes.
15      MR. GERBER:  Okay.
16          Can you turn to page 2 of the exhibit,
17  kindly?  And scroll down, if you don't mind.  Thank
18  you.
19  BY MR. GERBER:
20      Q   Okay.  It appears that on page 2 there's
21  engagement survey for 2016, engagement 2013, and
22  things called "schedule STR" and the like.  Is it fair
23  to say these documents do not predate 2013 as best you
24  recall?
25      A   I don't recall but I believe there are some

7 (Pages 22 - 25)

Page 26

1    that do.
2        Q    Okay.  Are there any that go back prior to
3    2010, Mr. Stabile?
4        A    Yes.
5        Q    What documents did you produce that go back
6    prior to 2010 that you recall?
7        A    The ones that I recall, there are schedules.
8    There are --
9        Q    Go ahead.  One thing.  So schedules were
10   schedules of work or work of others; correct?
11       A    Correct.
12       Q    Okay.  Next.
13       A    Financial plans from the aspect of my
14   business plan in order to drive volume and sales
15   within each of my stores.
16       Q    Okay.
17       A    I believe there are engagement plans.
18       Q    And engagement plans are how to engage
19   customers; correct?
20       A    No.  So engagement is the current, what we
21   call the "surveys" from the associates that were -- me
22   and or with me.
23       Q    Okay.  In other words, the --
24       A    -- to provide an associate engagement.
25   Sorry.  My apologies.

Page 27

1        Q    All right.  And in none of these documents
2    is there any "agreement with Macy's" is there?
3        A    Could you go back to -- I -- I don't know.
4    Could you go back to Exhibit 1 or the first page?
5            MR. GERBER:  Go ahead.
6            THE WITNESS:  Scroll up.
7            There are agreements in there.  If
8    you'll notice it says, "review."  There are documents
9    in there.
10   BY MR. GERBER:
11       Q    Those are performance review documents;
12   correct?
13       A    Performance reviews, yes.
14       Q    And you say a performance review is an
15   agreement?
16       A    Any pertinent information that I received
17   from Macy's that I had is -- was in here.
18       Q    Okay.  So any pertinent information that you
19   received and that you retained as you moved from
20   place-to-place and that you retained as you moved from
21   California to New Jersey that you decided to keep was
22   in these folders and in the documents you produced;
23   correct?
24       A    Yes.
25       Q    Okay.

Page 28

1            MR. GERBER:  Can you shut this
2    document, kindly, Mr. Melara, and put on the screen
3    Exhibit 3?  I think you can stop there.
4            (Exhibit 3 was marked for
5            identification.)
6    BY MR. GERBER:
7        Q    Mr. Stabile, according to your declaration
8    in September 2003, you resided at the Erma Road
9    address; correct?
10       A    Correct.
11       Q    Okay.  You're aware that in its application
12   to the court that Macy's produced documents concerning
13   the arbitration solution, it's in-store arbitration
14   program, that it contends were mailed to you at your
15   San Diego home address in 2003 and 2004; correct?
16           I understand you're not admitting you got
17   them.  But you understood that that's Macy's
18   contention; right?
19       A    I understand that is their contention, yes.
20       Q    Okay, thank you.  You did not find this
21   brochure in your folders of the materials that you
22   kept and collected and produced in this case, your
23   document production; right?
24       A    No.
25       Q    And if I understand it, you do not recall

Page 29

1    whether you received this brochure by mail from Macy's
2    in January of 2004; correct?
3        A    Correct.
4        Q    And you don't recall whether you received
5    this brochure from Macy's in 2003 or '04 or '05;
6    correct?
7        A    Correct.
8        Q    So your testimony under oath is you cannot
9    recall whether or not you received Exhibit 3 by mail;
10   correct?
11       A    Correct.
12           MR. GERBER:  Turn to Exhibit 4, please.
13   And go to the second page of the exhibit.  That's
14   fine.  Okay.  Perfect.
15           (Exhibit 4 was marked for
16           identification.)
17   BY MR. GERBER:
18       Q    Mr. Stabile, this was a document that Macy's
19   submitted to the court in connection with its
20   application earlier.  And the supporting declaration
21   said that the brochure we looked at in Exhibit 3 was
22   mailed to you in the early part of 2004.
23           And the address that's listed for that
24   mailing is the Erma Road address, referring to Exhibit
25   4.  Do you see that address?

8 (Pages 26 - 29)

1    A   I do.
2    Q   Okay.  And at the beginning of 2004, is it
3  your recollection you were living at the Erma Road
4  address?
5    A   I believe so.
6    Q   Okay.  And it's your testimony that --
7  strike that.  And the Erma Road address is accurately
8  set forward on the bottom of page 2 of Exhibit 4, 9929
9  Erma Road?  Can you read it, sir?
10    A   I can.
11    Q   Does that accurately reflect what you recall
12  your Erma Road address was when you lived at that
13  location?
14    A   Yes.  At that location, yes.
15    Q   Okay.  There came a time sometime after
16  early 2004 when you moved to a different location in
17  San Diego; correct?
18    A   Correct.
19    Q   Okay.  And I know that you may not be able
20  to say the exact date, but would you agree that you
21  moved to a different location sometime between
22  February or March in 2004 and the end of 2004?
23    A   I don't recall the exact date.
24    Q   I'm not asking you the exact date, sir.  I
25  know that you're being very direct.  I know that your

1  testimony is that you believe in January '04 you still
2  lived at Erma Road, that's what you believe.  Sometime
3  later in 2004 you moved; correct?
4    A   I believe so, yeah.
5    Q   Okay.  And would you therefore believe that
6  by the fall of 2004 you were at your second location?
7    A   I believe so.
8    Q   Okay.
9        MR. GERBER:  Let me ask the court
10  reporter to put up on the screen Exhibit 5.
11        (Exhibit 5 was marked for
12         identification.)
13  BY MR. GERBER:
14    Q   Have you seen this document before?  It was
15  in the materials that Macy's filed with the court?
16    A   This specific document?
17    Q   Yes.
18    A   No.
19    Q   You're not sure.
20    A   Okay, I'm not sure.  Yeah.  I haven't seen
21  this specific document.
22    Q   This document was an exhibit to an affidavit
23  that reflected the address that Macy's contends it
24  mailed you materials, including an election form, in
25  the fall of 2004 called "The Second Opportunity."

1        This document has an address of 2055 Front
2  Street, number 8 in San Diego; correct?
3    A   Correct.  That's what it says.
4    Q   Okay.  Was that the address that you lived
5  in after you moved from the Erma Road address in San
6  Diego?
7    A   Yes, it is.
8    Q   And after you moved, would it be you who
9  provided Macy's with your new address on Front Street?
10    A   Yeah.  Yes.
11    Q   Okay.  So to the best of your recollection,
12  if Macy's has this address in its file as of the fall
13  of 2004 as your home address, it would be because you
14  had provided your home address by that time on Front
15  Street to Macy's; correct?
16    A   Yes.
17    Q   In your folders --
18        MS. FARBER:  I'm sorry for interrupting
19  you.  Could you just indicate which Bates Number page
20  it is?  It's probably at the bottom.  Oh.  Okay.  All
21  right.  Thanks.
22        MR. GERBER:  Thank you.
23  BY MR. GERBER:
24    Q   As with the other mailings --
25        MR. GERBER:  You can take this off the

1  screen for a second, kindly, Mr. Melara.  Okay.  Thank
2  you.
3  BY MR. GERBER:
4    Q   As with the other mailings that Macy's
5  contended made to you with regard to the mailing in
6  the fall of 2004, what's called the "We've Got You
7  Covered" mailing with an election form, you do not
8  recall whether you received those documents by mail;
9  correct?
10    A   Correct.
11    Q   And as with your earlier testimony, you've
12  been straightforward about it, you don't recall one
13  way or the other whether you did or did not receive
14  them by mail; correct?
15    A   Correct.  I -- I don't recall receiving.
16    Q   Right.  And "don't recall" means you don't
17  recall whether you did and you also do not recall
18  whether you did not; correct?
19    A   Correct.
20        MR. GERBER:  Okay.  Thank you, sir.
21  Will you turn to Exhibit 6, please?
22        (Exhibit 6 was marked for
23         identification.)
24        And can you scroll down for -- to the
25  next page which will be, Ms. Farber, I believe it's

1  going to be 0185. It's not readable, at least not on
2  my printout in black and white.
3          MS. FARBER: Oh, okay.
4  BY MR. GERBER:
5      Q   Mr. Stabile, this is amongst documents that
6  Macy's contends it mailed to you at the Front Street
7  address reflected in Exhibit 5. If I understand your
8  testimony, you do not recall whether or not you
9  received the second page of Exhibit 6; is that
10  correct, sir?
11     A   Correct.
12     Q   And you did not find Exhibit 6 in any of
13  your collected folders, the photographs of which were
14  Exhibit 2; correct?
15     A   That is correct.
16          MR. GERBER: Can you kindly put up on
17  the screen as Exhibit 7 Mr. Stabile's answers to
18  interrogatories?
19          (Exhibit 7 was marked for
20          identification.)
21  BY MR. GERBER:
22     Q   Mr. Stabile, in connection with the court
23  order that the parties engage in limited discovery, as
24  you know, this is limited because we're not dealing
25  with the merits of your claims. We asked you certain

1  questions in writing that you answered under oath. Do
2  you recall that?
3      A   Yes.
4      Q   Okay.
5          MR. GERBER: Mr. Melara, could you turn
6  to the last page of Exhibit 7 for a moment, please, so
7  Mr. Stabile can see the certification page?
8  BY MR. GERBER:
9      Q   Do you recall reviewing the questions and
10  your answers and authorizing your signature by
11  DocuSign that the answers were true under penalty of
12  perjury, Mr. Stabile?
13     A   Correct.
14     Q   Okay. And you reviewed this document before
15  your testimony in this deposition?
16     A   Yes.
17     Q   We direct your attention to page 2 of the
18  document, if you would. Mr. Stabile, tell me whether
19  I'm reading the question and then your answer on
20  question 6 accurately?
21          Question: State whether you received any
22  mail from Macy's at the Erma Road address and identify
23  the type of mail received. Response: "I do not
24  recall receiving mail from Macy's at any Erma Road
25  address." Do you see that question, sir?

1      A   I do.
2      Q   Okay. Earlier it defined the Erma Road
3  address as the 9929 address, number 204; correct?
4      A   Correct.
5      Q   Okay. So you don't recall whether you did
6  or whether you did not receive any mail from Macy's at
7  the Erma Road address; correct?
8      A   Correct.
9      Q   Okay. Question number 7 is the reverse.
10  Question: Please state if you are aware of any mail
11  that was sent by Macy's to the Erma Road, it should
12  read Erma Street, Erma Road address and was not
13  received by you. If so, please identify what mail
14  sent by Macy's was not received by you.
15          And your response was, "I do not know of any
16  mail from Macy's not received at any Erma Road
17  address." Is that answer true?
18     A   Correct.
19     Q   Okay. And I understand, sir, from that
20  answer that you don't know whether you did or did not
21  receive any mail from Macy's at the Erma Road address
22  at this time? You simply do not recall; right?
23     A   Correct.
24     Q   And regarding the Front Street address,
25  question 9 asked, "State whether you received any mail

1  from Macy's at the Front Street address and identify
2  the type of mail received."
3          And your response was, "I do not recall
4  receiving mail from Macy's at the Front Street
5  address;" correct?
6      A   Correct.
7      Q   Okay. And as with your prior statements
8  about "do not recall," you're accurately saying in
9  this answer that you don't recall whether you did or
10  whether you did not receive mail from Macy's at the
11  Front Street address; correct?
12     A   Correct.
13          MR. GERBER: Can you put up on the
14  screen next Exhibit 8, Mr. Melara?
15          (Exhibit 8 was marked for
16          identification.)
17  BY MR. GERBER:
18     Q   I apologize, Mr. Stabile. This is slightly
19  out of order. In front of you is an exhibit that
20  Macy's submitted to the court concerning the address
21  that it contends it mailed the first fall 2003
22  "Solutions In-Store Arbitration Program" materials to
23  you.
24          I've already asked you about whether you
25  received that mailing. But just for the record, as

Page 38

1 you stated in your declaration, this address, 9929
2 Erma Road, number 204, in San Diego was the address
3 that you lived at during the fall of 2003 and through
4 at least January or so of 2004; correct?
5     A   Correct.
6     Q   Mr. Stabile, when you were employed by
7 Macy's, did you participate in a 401(k) retirement
8 plan?
9     A   Yes.
10    Q   And to the best of your recollection, did
11 you participate in that retirement plan at least from
12 2003 until your employment with Macy's ended?
13    A   I don't recall the date I signed up.
14    Q   Okay.
15        MS. FARBER:  Before you ask your next
16 question, I just need a minute.  I just got a --
17        THE REPORTER:  Okay.  We are now off
18 the record.
19        (Off the record.)
20        THE REPORTER:  Okay.  We are back on
21 the record.
22 BY MR. GERBER:
23    Q   Okay, Mr. Stabile, can you hear me?
24    A   I can.
25    Q   Okay.  Thank you, sir.  We're back on the

Page 39

1 record.  All the ground rules still apply.
2        Mr. Stabile, in 2003 at the time that Macy's
3 has attested that it mailed you "Solutions In-Store
4 Arbitration Program" materials, what was your
5 position?  What was your employment position with
6 Macy's?
7     A   In 2003, I don't remember the exact date but
8 I was an on-call -- what was classified as an on-call
9 associate.
10    Q   Okay.  And in 2002 what was your role?
11    A   I believe on-call.
12    Q   Okay.  And "on-call" means -- if you could
13 explain?
14    A   Sure.  If there were hours available, I was
15 able to pick up shifts or request.  Or if there was a
16 call out, meaning another associate did not show up
17 for work for whatever reason, they would go down a
18 list and they would call in employees to cover that
19 shift.
20    Q   Okay.  And did you continue in that role
21 after 2003?
22    A   I don't recall the exact date when I -- when
23 I switched over to my new role.
24    Q   What was your next role after being an
25 on-call associate?

Page 40

1     A   Night supervisor, I believe, is what it was
2 called.
3     Q   Okay.  And was that at the Horton Plaza
4 store as well?
5     A   Correct.
6     Q   You don't know whether it was on-call or
7 night supervisor in 2004?
8     A   I don't remember if it was 2003 or '04.
9     Q   Okay.  And when did you begin keeping
10 documents related to your employment with Macy's?
11    A   I mean, I can't recall an exact date where I
12 said "I'm going to hold onto things," but it was in
13 2000s.
14    Q   Okay.  But you did not hold on to and keep
15 in your folders that you produced every document that
16 you got from Macy's from the 2000s through the end of
17 your employment; did you?
18    A   I did not hold every single document,
19 correct.
20    Q   Nor have you been able to produce every
21 document that you received from Macy's during your
22 employment in this case; correct?
23    A   I'm sorry.  Can you repeat the question?
24    Q   You were not able to produce any documents
25 related to your employment by Macy's, other than the

Page 41

1 documents that you've produced and were Bates numbered
2 by your counsel; correct?
3     A   Those -- correct.  Those were the documents
4 that I had in the photos.
5     Q   Okay.  Let me direction your attention --
6        MR. GERBER:  And please put on the
7 screen Exhibit 9, Mr. Melara.
8        (Exhibit 9 was marked for
9        identification.)
10        Can you scroll down to the bottom so we
11 can identify the Bates Number, please?  It is, for the
12 record, it's Macy's Bates Number 000188.  Can you go
13 back up to the top?  Thank you.
14 BY MR. GERBER:
15    Q   Mr. Stabile, do you recognize your name and
16 your Erma Road address near the top of this document
17 in the typewritten or computer-printed area?
18    A   Yes.
19    Q   Okay.  And to your best recollection, as of
20 May 2004, was the Erma Road address your address?
21    A   I don't recall the exact date.
22    Q   Okay.  It's fair to say though, sir, that
23 when you moved from Erma Road to Front Street that you
24 promptly reported it to your employer so that your
25 employer so that your employer would have its records

11 (Pages 38 - 41)

Page 42

1 up-to-date; correct?
2    A  Correct.  I did report it to my employer.
3    Q  Okay.  You don't deny receiving this letter;
4 correct?
5    A  I don't recall having seen this letter.
6    Q  Okay.  So you don't recall whether or not
7 you received this letter; is that fair?
8    A  Correct.
9    Q  Okay.  And this letter was not found in your
10 documents that you have held on to and that you
11 produced in this case; correct?
12    A  I don't believe so.
13    Q  I can represent to you, sir, that it has not
14 been produced by you.  This document does refer to an
15 important issue concerning your participation in the
16 401(k) plan; right?
17    A  From what I can see, yes.
18    Q  Well, I'll represent to you this is not
19 amongst the documents you produced.  Based upon that,
20 is it fair to say that this document was not in any
21 "designated folder" or folders that you were able to
22 produce; correct?
23    A  Correct.
24        MR. GERBER:  Please put on the screen
25 Exhibit 10.

Page 43

1        (Exhibit 10 was marked for
2         identification.)
3 BY MR. GERBER:
4    Q  While you were employed by Macy's, at some
5 point did you ask to participate in the optional life
6 insurance and disability plan?
7    A  Yes, I believe so.
8    Q  Okay.
9        MR. GERBER:  Can you roll up a little
10 bit, please?  Just a little.
11 BY MR. GERBER:
12    Q  I'll represent to you that this letter was
13 produced by Macy's but was not contained in your
14 "designated folder" as the documents that you
15 produced, photos of which are Exhibit 2.
16        Do you recall receiving this letter from
17 Macy's?
18    A  I -- I don't recall.
19    Q  Okay.  Is it fair to say you neither recall
20 whether you did receive it by mail from Macy's or
21 whether you did not receive it?
22    A  That's correct.
23    Q  Okay.  Do you recall having to submit a
24 statement of health in order to participate in the
25 life insurance and ADD program in 2004?

Page 44

1    A  I don't recall.
2    Q  Do you deny that you did so?
3    A  No.
4        MR. GERBER:  Can you turn to Exhibit
5 11, please?
6        (Exhibit 11 was marked for
7         identification.)
8 BY MR. GERBER:
9    Q  Mr. Stabile, this is a written response
10 signed by your lawyers to Macy's limited demand for
11 documents in this case.
12        MR. GERBER:  Give me one second,
13 please.  Roll down to page 2 of the document.
14 BY MR. GERBER:
15    Q  In request number 2, can you see that, Mr.
16 Stabile?
17    A  Yes.
18    Q  Okay.  It asked you for all correspondence
19 to or from Macy's maintained by you in a "designated
20 folder" as set forth in paragraph 7 of your
21 declaration submitted in opposition to Macy's Motion
22 to Compel Arbitration.  Please also produce the cover
23 of said folder or any label on the folder.
24        And the response was "See attached lists of
25 all Macy's documents in Plaintiff's possession.

Page 45

1 Copies of actual documents labeled as Bates Numbers
2 CS001-239."  Do you see that response, sir?
3    A  I do.
4    Q  Remember that I talked about the documents
5 that your counsel produces on your behalf in this
6 case?
7    A  Yes.
8        MR. GERBER:  Okay.
9        Turn to the last page of Exhibit 11,
10 please, Mr. Melara.  The lists of the documents.  I
11 think you need to shrink it down slightly so Mr.
12 Stabile can see it.  Okay, thank you.
13 BY MR. GERBER:
14    Q  Mr. Stabile, this is the list that your
15 lawyers attached and that they created from the
16 documents that you gave them and that you produced;
17 okay?  And there's a description of documents;
18 correct?
19    A  Correct.
20    Q  Okay.  And, just so you know, where it says
21 "folder covers," it's five things from the bottom.  Do
22 you see that?
23    A  Yes.
24    Q  Okay.  Those were the color photographs that
25 you and I looked at as Exhibit 2 today; okay?  If you

12 (Pages 42 - 45)

Page 46

1  want me to go back to them I will.
2      A   Okay.
3      Q   All right.  The documents in the first 8 or
4  10 categories have a date; correct?  Two thirteen,
5  2013, and then through 2019 and then August 2016 and
6  August 2017, all above the folder covers; correct?
7      A   Yes.
8      Q   Okay.  And then there's the folder covers,
9  Bates Number CS180 to 181 that we looked at earlier;
10  right?
11      A   Yes.
12      Q   Okay.  And below that "Jersey Talent Manager
13  STR."  That relates to your work at Macy's after you
14  moved to New Jersey; right?
15      A   Correct.
16      Q   Okay.  And the July 2018 culture poster
17  relates to your work also after you moved to New
18  Jersey; correct?
19      A   Correct.
20      Q   All right.  And the "Miscellaneous
21  Engagement Material Imperial CA."  That was the
22  associate engagement documents that you were speaking
23  about earlier?
24      A   Yes.
25      Q   Okay.  And those date back to approximately

Page 47

1  when?
2      A   2015, '16 approximately, I believe.
3      Q   Okay.  Just before you moved from California
4  to New Jersey; correct?
5      A   Correct.
6      Q   Okay.  And the previous store manager, JC
7  store engagement results, that's a document you
8  acquired also after you moved to New Jersey; correct?
9  Those documents?
10      A   Yes.
11      Q   Okay.  So none of the documents that you've
12  produced predate approximately, I think you said, 2013
13  or so; correct, sir?
14      A   No.
15      Q   Okay.  Which in the "Miscellaneous
16  Engagement" materials documents predate 2013?
17      A   I -- based on this list, I do not know the
18  specifics.  Those document descriptions are the labels
19  that were put on the outside of the folder.
20      Q   Okay.  And if we don't see any documents
21  that date back to 2004 or '05 or '06 in all the
22  documents that you produced, in all 200 of them, then
23  you do not have them now; correct?
24      A   I don't believe so.
25      Q   When you say you don't believe so, you know

Page 48

1  you're under an obligation to search for documents;
2  correct?
3      A   Oh, yes.  Yes.  Correct.
4      Q   So these are all the documents you have
5  concerning any agreements or understandings you had
6  with Macy's; correct?
7      A   Correct.
8          MR. GERBER:  All right.  I'm going to
9  ask for a five-minute break.  I'm almost at the end.
10  Can we break for five minutes?
11          MS. FARBER:  Yes, sure.
12          THE REPORTER:  We are off the record.
13          (Off the record.)
14          THE REPORTER:  We are back on the
15  record.
16  BY MR. GERBER:
17      Q   Mr. Stabile, just a few more questions.
18  During the time that you lived at the Erma Road
19  address in 2003 until the first part or so of 2004, to
20  the best of your recollection, do you recall having
21  any issues receiving mail from the United States
22  Postal Service when you were living at that address?
23      A   I don't recall any.
24      Q   Okay.  With respect to the time that you
25  moved to the 2055 Front Street, number 8 address,

Page 49

1  later in 2004 and into 2005, do you recall any issues
2  at the Front Street address with your receiving mail
3  from the United States Postal Office?
4      A   I don't recall any.
5      Q   Okay.
6          MR. GERBER:  Just let me look at my
7  notes for a second.  In connection with this limited
8  deposition, I don't have any additional questions for
9  Mr. Stabile at this time.
10          MS. FARBER:  And I have none.
11          MR. GERBER:  Okay.  Is your client
12  going to waive reading and writing of the deposition?
13  Or do you want to instruct the court reporter on that?
14          MS. FARBER:  Well, I assume there's
15  going to be no problems with the transcript, but I
16  would like to see it just to be sure.
17          MR. GERBER:  Okay.
18          So Mario, under Rule 30, I believe Ms.
19  Farber is going to be ordering the transcript.
20          Am I correct, Ms. Farber?
21          MS. FARBER:  Yes, yes.
22          MR. GERBER:  Okay.  All right.  So it's
23  a federal court transcript.  The witness has not
24  waived reading.  Will Veritext please attach to the
25  electronic transcript the 11 exhibits that we've

13 (Pages 46 - 49)

Exhibit "C"



EXHIBIT 2



CS0183

Exhibit "D"

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**Leslie A. Farber, Esq.**
Attorney ID: 019041991
**LESLIE A. FARBER, LLC**
105 Grove Street, Suite 1
Montclair, New Jersey 07042
Ph. (973) 707-3322
Email: LFarber@LFarberLaw.com

**FRED SHAHROOZ SCAMPATO, ESQ.**
Attorney ID: 020811991
**Law Offices of Shahrooz Scampato, P.C.**
121 So. Euclid Street, 2nd Floor
Westfield, New Jersey 07090
Ph. (908) 301-9095
Attorneys for Plaintiff

|  |  |
|---|---|
| **CURTIS STABILE,** *Plaintiff,* <br><br> v. <br><br> **MACY'S INC., FELICIA GREEN-HALL,** *Defendants.* | Hon. John Michael Vazquez, U.S.D.J. <br><br> Case No. 2:22-cv-06776 <br><br> <u>CIVIL ACTION</u> <br><br> **PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR DOCUMENTS** |

TO:   Steven Gerber, Esq.
Barton Gillman LLP
165 Passaic Avenue, Suite 107
Fairfield, NJ 07004
*Attorneys for Defendants, Macy's, Inc. and Felecia Green-Hall*

Plaintiff objects to each and every document request to the extent that it seeks privileged communications, is overly broad, unduly burdensome, and/or seeks irrelevant and non-documentary evidence.   The following are Plaintiff's responses to Defendants' Request for Production of Documents.

1.   <u>Request</u>: Please produce any and all calendars or diary entries related to your duties at Macy's, specifically any such documents that show meeting times and dates and that show deadlines from September 2003 to December 2004.

**EXHIBIT**

11

Response:   Plaintiff does not have any calendars or diary entries related to his former duties at Macy's.   He had utilized Macy's Outlook calendar attached to his Macy's email address (Curtis.stabile@macys.com) during his employment.   But Macy's revoked all access to files, One Drive, email, etc., when Plaintiff was suspended pending termination.   Upon being terminated, Plaintiff was unable to retrieve anything on his cloud, One Drive, email, account, etc., and was requested to return the company provided laptop computer.

2.      Request:   All correspondence to or from Macy's maintained by you in a "designated folder" as set forth in Paragraph 7 of your declaration submitted in opposition to Macy's Motion to Compel Arbitration.   Please also produce the cover of said folder or any label on the folder.

Response:   See attached list of all Macy's documents in Plaintiff's possession.   Copies of actual documents labeled as Bates CS0001-0239 available via DropBox.com link: https://www.dropbox.com/scl/fo/ks3lprra62agqpmo5dhf3/h?rlkey=ow9ltan83qy0ongnhhn0sasc5&dl=0

3.      Request:   All agreements with Macy's maintained by you in a "designated folder" as set forth in Paragraph 7 of your declaration submitted in opposition to Macy's Motion to Compel Arbitration.

Response:   None.

4.      Request: Any other documents related to Macy's maintained by you in a "designated folder" as set forth in Paragraph 7 of your declaration submitted in opposition to Macy's Motion to Compel Arbitration not already produced in response to Requests numbered 2 and 3.

Response:   This request is objected to on the grounds it seeks documents beyond the scope of the limited discovery permitted by the Court at this time.   Notwithstanding said objection, see attached list of all Macy's documents in Plaintiff's possession.   Copies of actual documents labeled as Bates CS0001-0239 available via DropBox.com link: https://www.dropbox.com/scl/fo/ks3lprra62agqpmo5dhf3/h?rlkey=ow9ltan83qy0ongnhhn0sasc5&dl=0
Plaintiff also is in possession of some handwritten Post-it notes he made, managers schedules, employment reviews of his job performance, and employee awards he received from Macy's, none of which mention or related to the subject of arbitration or Macy's Solutions InSTORE Program.

5.      Request:   Please produce all documents that relate to Macy's Solutions InSTORE Program that you received while employed by Macy's in California.

Response:   None.

6.      Request:   Please produce copies of the W-2 statements that you received from Macy's from the beginning of your employment through 2008.

Response:   Plaintiff does not have these documents.

7.      <u>Request</u>:   Please produce copies of any benefits information that you received from Macy's from the beginning of your employment through 2008, specifically including but not limited to, enrollment materials.

<u>Response</u>:   None in Plaintiff's possession or control.

8.      <u>Request</u>:   Please produce copies of any information related to Macy's 401(k) program that you received from Macy's from the beginning of your employment through 2008, specifically including but not limited to, enrollment materials.

<u>Response</u>:   None in Plaintiff's possession or control

9.      <u>Request</u>:   Please produce copies of any and all correspondence you submitted to the Office of Solutions InSTORE during your employment.

<u>Response</u>:   None.

10.     <u>Request</u>:   To the extent you identify or reference in any of your Answers to Defendants' Interrogatories Directed to Plaintiff any documents not otherwise produced by you in response to these Requests, please produce copies of all such.

<u>Response</u>:   None.


                                        LESLIE A. FARBER, LLC
                                        Attorneys for Plaintiff

Dated:  September 11, 2023          By: _____
                                        Leslie A. Farber

                                        3

**STABILE v MACY'S et al**
**Plaintiff's Document Production**

<u>Document Description</u>                                                              <u>Bates #s</u>

| Document Description | Bates #s |
|---|---|
| 2013 Engagement Survey Results | CS 0001-0061 |
| 2015 Imperial Black Friday Execution Presentation | CS 0062-0070 |
| 2016 Imperial Curtis Review Folder – Sales etc | CS 0071 |
| 2017 NJ Rockaway Engagement Papers | CS 0072-0076 |
| 2017 Rockaway NJ Previous SM Engagement Results | CS 0077-0106 |
| 2017 Rockaway NJ Sales Review Curtis Sales etc | CS 0107 |
| 2018 JC Misc Papers-Path to Growth Incentive Rollout-MAC Business Review | CS 0108-0121 |
| 2019 MyMacys JC Presentation Lobbying for Big Ticket to Regional Team | CS 0122-0154 |
| 2019 Spring JC Round Robin Strategy Form | CS 0155-0163 |
| 2019 VPSM Preparation – Round Robin | CS 0164-0169 |
| August 2016 Leadership Institute Cincinatti for Store Managers | CS 0170-0176 |
| August 2017 Relocation Documentation CA_NJ | CS 0177-0179 |
| Folder Covers | CS 0180-0181 |
| Jersey Talent Manager STR | CS 0182-0186 |
| July 2018 Culture Pulse Survey | CS 0187-0192 |
| Misc Engagement Material – Imperial CA | CS 0193-0194 |
| Previous Store Manager JC Store Engagement Results | CS 0195-0239 |

Exhibit "E"

PRINTED FROM IDS CONFIDENTIAL RETIREMENT

 Federated**HR** Services

*554·77·9735*

9111 Duke Blvd.
Mason, Ohio 45040

May 3, 2004

Curtis Stabile
9929 Erma Road, #204
San Diego, CA  92131

Re: Federated Department Stores, Inc Profit Sharing 401(k) Investment Plan

Dear Mr. Stabile:

During the annual eligibility determination process for the retirement program, you were not correctly enrolled you into the 401(k) Plan.   You should have been automatically enrolled effective March 1, 2004.  Due to this administrative delay, you are now scheduled to begin deductions starting with your first paycheck after June 1.

Because of this issue, you have the opportunity to make up the missed contributions from March 1, 2004 through the end of May.  By temporarily increasing your deduction percentages for a limited time, you will be able to bring your amount of savings contributions up to the level where it would have been if deductions had begun appropriately.

For example, an associate who should have been enrolled between March 1 and June 1 missed 13 pay periods.  If this person had earned $100.00 per week throughout this period and should have been enrolled at 5%, the total amount of make-up savings would be $65.00 ($5 times 13 weeks).  By increasing the contribution percentage from 5% to 10% for 13 weeks, the participant would contribute an additional $65.00 equal to the make-up savings amount.   In this case, the participant's weekly deduction would increase from $5.00 to $10.00 for the given time period.  After that 13-week period, the participant may elect to reduce the percentage to 5%.  In order to obtain the maximum company match, this action must occur during 2004.

If this method is not appropriate for your situation, please contact us.  In order to change contributions percentages, please log on to the retirement Web site through *in-site* or www.employeeconnection.net or use the automated phone line by calling 1-800-337-2363 and selecting option number 1.  If you have any questions or concerns, please contact a Federated HR Services representative at 1-800-337-2363.

Sincerely,

Brian S. Griffin
Federated HR Services

MACYS000188 9735

**EXHIBIT**

9

Exhibit "F"

PRINTED FROM IDS CONFIDENTIAL BENEFITS

 Federated **HR**
**Services**

9111 Duke Blvd.
Mason, OH  45040

June 09, 2004

Curtis P Stabile
9929 Erma Road
#204
San Diego, CA  92131

Dear Mr. Stabile,

We have received your Optional Life/AD&D Election Form.  Since you are not currently
enrolled in the plan, Evidence of Insurability approved by the carrier is required for
enrollment into the plan.

Enclosed is a Statement of Health and a pre-addressed envelope. Please return the
completed form to my attention by June 24, 2004.

We will then submit your application to the carrier for consideration, pending the carrier's
decision on the full amount you requested.  We will advise you in writing when we are
notified of their decision.

If you have any questions or concerns, please feel free to contact Federated HR Services at
1-800-337-2363.

Sincerely,

Jacki Miles
Federated HR Services

Enclosure(s)
Div: Macy's West ; SSN: 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 ; ID: 17046017

MACYS000189

EXHIBIT

10